```
UNITED STATES DISTRICT COURT                          FILED
EASTERN DISTRICT OF NEW YORK                    IN CLERK'S OFFICE
                                              U.S. DISTRICT COURT E.D.N.Y
------------------------------------------X
                                                ★  NOV 1 0 2010  ★
UNITED STATES OF AMERICA,
                                                  BROOKLYN OFFICE
                    Plaintiff,

                                                MEMORANDUM
        - against -                             DECISION AND ORDER

SIXTY-ONE THOUSAND NINE
HUNDRED DOLLARSAND NO CENTS                     10 Civ. 1866 (BMC)
($61,900.00) SEIZED FROM ACCOUNT
NUMBER XXXXXX4429 HELD IN THE
NAME OF PRP RESTAURANT, INC., AT
TD BANK, N.A. LOCATED IN ASTORIA,
NEW YORK, AND ALL PROCEEDS
TRACEABLE THERETO,

FIVE HUNDRED EIGHTY-SEVEN
THOUSAND FIVE HUNDRED THIRTY-
SIX DOLLARS AND FORTY-FIVE CENTS
($587,536.45) SEIZED FROM ACCOUNT
NUMBER XXX-X7872 HELD IN THE
NAME OF PRP RESTAURANT, INC., AT
MERRILL LYNCH PIERCE FENNER &
SMITH, LOCATED IN NEW YORK, NEW
YORK AND ALL PROCEEDS
TRACEABLE THERETO, and

TWO HUNDRED THIRTY THOUSAND
FOUR HUNDRED DOLLARS AND NO
CENTS ($230,400.00) SEIZED FROM
ACCOUNT NUMBER XXX-X7A80
HELD IN THE NAME OF ROBERT
POTENZA, AT MERRILL LYNCH PIERCE
FENNER & SMITH, LOCATED IN NEW
YORK, NEW YORK AND ALL PROCEEDS
TRACEABLE THERETO ,

                    Defendants.
------------------------------------------X
```

**COGAN**, District Judge.

This is an *in rem* civil forfeiture action stemming from alleged structuring activity. The Government and the sole claimant filed a joint discovery dispute letter, summarizing their

disagreements over the scope of the work product and the law enforcement privileges as asserted by the Government in withholding potentially discoverable documents. The Government noted that the nature of the material prevented it from making all of its arguments in the joint letter. The Court ordered an *in camera, ex parte* submission. The Government complied, submitting 24 documents. In its *ex parte* submission, the Government raised additional grounds for non-disclosure. The Court discusses these grounds in a separate order to be filed under seal, as discussion of those grounds without seal would itself defeat the privilege. For the reasons set forth below and in the sealed opinion, the Court grants the Government's request for a protective order over all 24 documents.

### *(1)    Work Product*

The Government seeks protection of 10 documents, consisting of notes and memoranda based on agents' interviews of the claimant. These squarely fall within the work product rule as the interviews were conducted at the behest of the US Attorney's office and thus in contemplation of litigation. See Fed.R.Civ.P. 26(b)(3). Claimant argues that facts in the documents should be separated from mental impressions and disclosed. He fails to appreciate the difference between gathered and underlying facts; the latter is never protected, but the former is, unless the party requesting the material shows a substantial need and undue hardship. See 7 Moore's Federal Practice § 33.62. Claimant does not attempt to make this showing, and given the nature of these documents – notes on his own interviews, by agents who can be readily deposed – it is difficult to see how he could.

### *(2)    Law Enforcement Privilege*

The Government claims this protection over a document that lists factors which the IRS uses to consider whether to take an enforcement action. The Second Circuit has recently

clarified the scope of the enforcement privilege. In re City of New York, 607 F.3d 923, 944 (2d Cir. 2010) (observing that the privilege is intended to protect, *inter alia*, "information pertaining to law enforcement techniques and procedures."). The claimant argues that there is no ongoing criminal investigation, so the privilege does not apply, but this is clearly wrong under Second Circuit law. See id. at 944 ("An investigation, however, need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public."). The IRS checklist seems to be precisely the type of document that was meant to be protected by this judge-made immunity; its revelation could hinder future enforcement.

The privilege is qualified and can be defeated by showing that the suit (or as in this case, the defense) is non-frivolous, the information is not available through other sources, and the party has a compelling need for it. Id. at 945. Claimant fails to meet the last prong. And even if he could defeat the privilege, the Court must still weigh the public interest of nondisclosure against his need for access, which again seems to cut in favor of protection, given the document's low probative value.

The more difficult argument raised by claimant is over the procedural mechanism for invoking the privilege. Claimant argues that even if the law enforcement privilege applies, the Government has forfeited its protection because it has failed to make the required threshold showing in its privilege log. I reject that argument.

Several district courts in the Second Circuit have required a rather elaborate mechanism for claiming the law enforcement privilege: there must be a formal claim by the head of the department having control over the requested information; assertion of the privilege must be based on actual personal consideration by that official; and the information for which the

3

privilege is claimed must be specified, with an explanation of why it properly falls within the scope of the privilege. See e.g., El Badrawi v. Dep't of Homeland Sec., 258 F.R.D. 198, 203 (D. Conn. 2009); United States v. Painting, No. 06-12994, 2008 U.S. Dist. LEXIS 49171, at*4 (S.D.N.Y. June 25, 2008); DGM Invs., Inc. v. N.Y. Futures Exchs., Inc., 224 F.R.D. 133, 139-40 (S.D.N.Y. 2004).

Claimant cites DGM to support his argument that the Government has failed to make the requisite showing. The Government attempts to distinguish DGM by stating that the test "may be applicable to the assertion of a 'Qualified Investigatory Privilege' over materials related to an ongoing disciplinary proceeding by a non-Governmental entity, [but] it is simply not applicable to the law enforcement privilege asserted by the Government in this case." It then cites a case that offers no relevant discussion. This is unhelpful; courts have used "investigatory privilege" to refer to the law enforcement privilege, see e.g., Otterson v. Amtrak, 228 F.R.D. 205 (S.D.N.Y. 2005) (using the two terms interchangeably), and the formal invocation has been required in different contexts, including in an *in rem* action brought by the Government. See Painting, 2008 U.S. Dist. LEXIS 49171.

El Badrawi, Painting, and DGM all rely on a District of Columbia Circuit decision, In re Sealed Case, 856 F.2d 268, 271 (D.C. Cir. 1988), for the proposition that the party invoking the privilege *must* meet the three threshold requirements. As discussed in Black v. Sheraton Corp. of America, 564 F.2d 531 (D.C. Cir. 1977), the District of Columbia Circuit jurisprudence can be traced back to United States v. Reynolds, 345 U.S. 1, 7-8 (1953), where the Supreme Court established procedural requirements for invoking the state secrets privilege.

Nothing in the Second Circuit caselaw suggests a similar application of Reynolds to the law enforcement privilege. In the recent case of In re City of New York, 607 F.3d 923, 944 (2d

Cir. 2010), the Second Circuit "adopt[ed] the holding of the D.C. Circuit [In re Sealed Case] that the party asserting the law enforcement privilege bears the burden of showing that the privilege applies to the documents in question." The Second Circuit explained, that "[t]o meet this burden, the party asserting the law enforcement privilege must show that the documents contain information that the law enforcement privilege is intended to protect." Id. It then went on to list what type of information should be protected. Significantly, however, the Court did not indicate that this burden also includes the procedural component set forth in In re Sealed Case.

The Reynolds requirements should not be imported to the rules regulating the invocation of the law enforcement privilege for at least two reasons. First, as one court has observed in criticizing Painting, our local rules do not put parties on notice to at least one of these requirements: "[a]lthough the submission of a declaration at an earlier time might have aided the plaintiffs in formulating their motion to compel, our local rules concerning the assertion of a privilege claim impose no such requirement." Aguilar v. Immigration & Customs Enforcement Div. of the United States Dep't of Homeland Sec., 259 F.R.D. 51, 57 (S.D.N.Y. 2009) (citing Local Civ. R. 26.2(a)).

Second, there is good reason to impose a substantial procedural burden on the Government when it invokes the state secret privilege because once it applies, the immunity is absolute. But this rationale is inapplicable to the law enforcement privilege, which by contrast is qualified and involves a multi-step weighing of the interests of the litigant and the public, as well as the need for the document and the strength of the case. See Fountain v. City of New York, No. 03 Civ. 4526, 2004 U.S. Dist. LEXIS 7539, at *11 (S.D.N.Y. May 3, 2004) ("Because the state secrets privilege is essentially absolute, courts have felt the need to make the procedures for invoking it extremely demanding. The official information privilege, in contrast, is not absolute,

and some relaxation of procedural stringency is therefore appropriate.") (internal citation and quotations omitted).

The Court in Martin v. Albany Business Journal, 780 F. Supp. 927, 932 (N.D.N.Y 1992), held that "*all* Government privileges must satisfy specific, formal requirements for proper invocation. This is so regardless of the type of Governmental privilege asserted." (collecting cases, and citing In re Sealed Case, 856 F.2d 268, to support the proposition as it applies to the law enforcement privilege). The Martin court leaned heavily on other decisions in that district when it applied the procedural requirements to the qualified informant's privilege: "DOL's argument that the formal claim requirement is only required for cases involving absolute Governmental privileges is unavailing, for it flies in the face of the unambiguous case precedent to the contrary." 780 F.Supp. at 933. It also reasoned that the policy behind the requirements applies with equal force to Governmental privileges that are qualified; we must still make sure, the court explained, "that the privilege is claimed by someone in the executive branch with sufficient authority and responsibility so that the court can rely upon his judgment that the claim was prudently invoked. . . . Only by mandating that an accountable executive official invoke a Governmental privilege can the courts be confident that the privilege is responsibly asserted based on agency goals and policies, and is not abused for litigation purposes." Id. at 932-33.

I find the analysis of the Martin court unpersuasive and disagree with the district courts in the circuit that have required a formal invocation of the law enforcement privilege; this requirement goes beyond Second Circuit precedent, and beyond our Local Rules. The Court can be quite confident that the privilege has not been abused for litigation purposes because it has conducted an *in camera* review of the documents. It is difficult to imagine how a formalistic set of requirements would have aided in the Court's determination, at least to such a degree that it

would have justified not only the prejudice to the invoking party (which has not been put on notice by the Local Rules about the additional hurdles), but the time spent by a head of a Governmental department who would have to familiarize herself with the privileged documents in order to file her affidavit. Our adversarial system depends on the integrity and professionalism of the attorneys to conduct discovery; when the trust is reasonably questioned, the Court, as it did in this case, can always step in.

Therefore plaintiff's [19] Motion for Protective Order is granted.

**SO ORDERED.**

/s/(BMC)

U.S.D.J.

Dated: Brooklyn, New York
November 10, 2010